1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES V. FARNSWORTH,

                Petitioner,

   v.

JERI BOE,

                Respondent.

CASE NO. 3:20-cv-05067-BHS

ORDER ADOPTING IN PART
REPORT & RECOMMENDATION

THIS MATTER is before the Court on Magistrate Judge Creatura's Report and

Recommendation ("R&R"), Dkt. 81. Petitioner Charles Farnsworth, proceeding pro se

and *in forma pauperis*, challenges his state court conviction for first degree robbery of a

financial institution as an accomplice, and his resulting life sentence, under 28 U.S.C.

§ 2254. Dkt. 67. The R&R recommends that the Court deny Farnsworth's habeas

petition, deny a certificate of appealability, revoke Farnsworth's *in forma pauperis* status,

and dismiss the case. Dkt. 81 at 41. Farnsworth objects. Dkt. 85.

## I.     FACTUAL & PROCEDURAL BACKGROUND

The facts below are drawn from the Washington Supreme Court's opinion

affirming Farnsworth's sentence, *Washington v. Farnsworth*, 185 Wn.2d 768, 772–74

(2016) (en banc). In October 2009, "Farnsworth and James McFarland were suffering heroin withdrawals and had no money to purchase more drugs. The pair agreed to 'rob' a bank. The plan was for McFarland to wait outside in the car while Farnsworth entered a bank wearing a wig and sunglasses as a disguise[.]" *Id.* at 772 (internal citations omitted). Farnsworth would then present a note to the teller, but McFarland grew increasingly frustrated with Farnsworth and grabbed the wig and note from Farnsworth's hands and entered the bank. *Id.* Farnsworth waited outside in the car, and McFarland approached a teller's counter and handed a teller the note. *Id.* at 772–73. The teller handed McFarland about $300 in small bills, and McFarland left. *Id.* at 773. The two men then drove away but were pulled over and arrested a few blocks from the bank. *Id.*

Both Farnsworth and McFarland were charged with first degree robbery under RCW 9A.56.200(1)(b), and both faced a life sentence under Washington's Persistent Offender Accountability Act ("POAA"). *Id.*; *see also* RCW 9.94A.570. McFarland agreed to a plea bargain for an 8- to 10-year sentence in exchange for his testimony against Farnsworth in Farnsworth's robbery trial. *Farnsworth*, 185 Wn.2d at 773. McFarland apparently agreed to testify against Farnsworth after Farnsworth acted rudely toward him while staying at Western State Hospital following arrest. *Id.*

The jury was instructed on both first degree theft and first degree robbery and unanimously convicted Farnsworth of first degree robbery. *Id.* In 2012, the Pierce County Superior Court sentenced Farnsworth to life imprisonment without parole under the POAA because the robbery conviction was Farnsworth's "third strike" offense. Dkt. 46-1, Ex. 1. Farnsworth appealed, and the Washington Court of Appeals affirmed in part but

vacated his robbery conviction and remanded for Farnsworth to be sentenced on first degree theft. *State v. Farnsworth*, 184 Wn. App. 305 (2014), *rev'd in part by Farnsworth*, 185 Wn.2d at 789. The Washington Supreme Court accepted review, reversed Division Two, and affirmed Farnsworth's conviction. *Farnsworth*, 185 Wn.2d at 789.

The Washington Supreme Court concluded there was sufficient evidence of a threat of force during the crime, that Farnsworth was an accomplice, and that he had not suffered cumulative error depriving him of a fair trial. *Id.* at 775–80 (threat of force), 780–81 (accomplice liability), 781–89 (cumulative error). The Supreme Court remanded to Division Two, however, to determine whether Farnsworth's prior conviction was properly counted as a strike for sentencing purposes. *Id.* at 789. On remand, Division Two affirmed Farnsworth's sentence. *State v. Farnsworth*, 199 Wn. App. 1012, 2017 WL 2365108, at *5 (2017) (unpublished opinion). The Washington Supreme Court denied review. *State v. Farnsworth*, 189 Wn.2d 1028 (2017).

Farnsworth then filed a personal restraint petition in Division Two. *Matter of Farnsworth*, 9 Wn. App. 2d 1080 (2019) (unpublished opinion). Division Two denied his petition, *id.*, and the Commissioner of the Supreme Court denied review, Dkt. 46-3, Ex. 43.

Farnsworth filed his § 2254 habeas petition in January 2020, Dkt. 1, and filed a second amended petition in April 2021, Dkt. 67. Farnsworth's second amended petition asserts six grounds for habeas relief: (1) prosecutorial misconduct; (2) ineffective assistance of counsel; (3) due process violations; (4) incomparable foreign conviction

1  used to enhance a life without parole sentence; (5) character/other acts evidence

2  impermissibly used to prejudice his defense; and (6) judicial bias. *Id.* at 5–11.

3      The R&R concludes that Farnsworth failed to show that the state courts

4  unreasonably applied federal law or unreasonably determined the facts, on any of his

5  claims. Dkt. 81. It recommends that the Court deny Farnsworth's habeas petition, deny a

6  certificate of appealability, and revoke Farnsworth's *in forma pauperis* status for

7  purposes of any appeal. *Id.* at 41.

8      Farnsworth's objections,[1] Dkt. 85, reiterate his complaints about prosecutorial

9  misconduct and ineffective assistance of counsel. The issues are addressed in turn.

10  ## II.   DISCUSSION

11  **A.   Section 2254 Habeas Standard**

12      Farnsworth seeks habeas relief pursuant to 28 U.S.C. § 2254 and challenges the

13  validity of his state court conviction. Section 2254(d) "bars relitigation of any claim

14  'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1)

15  and (2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The first exception allows

16  habeas relief on the basis that an adjudication "resulted in a decision that was contrary to,

17  or involved an unreasonable application of, clearly established Federal law, as

18  determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The

19  second exception provides habeas relief if the adjudication "resulted in a decision that

20

21      [1] Also pending is Farnsworth's Motion to Correct, Dkt. 96, his third Motion for Extension of Time, Dkt. 93. Farnsworth explains that he meant to file that motion in a different case. In any event, the latter motion, Dkt. 93, was already granted, Dkt. 95, and Farnsworth's motion to correct or withdraw his

22  motion, Dkt. 96, is DENIED as moot.

was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

**B.    Report & Recommendation**

A district judge must determine de novo any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3). A proper objection requires specific written objections to the findings and recommendations in the R&R. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Nevertheless, objections to a Magistrate's Report and Recommendation are not an appropriate vehicle to rehash or re-litigate the points considered and resolved by the Magistrate Judge. *See, e.g.*, *El Papel LLC v. Inslee*, No. 20-cv-01323 RAJ-JRC, 2021 WL 71678, at *2 (W.D. Wash. Jan. 8, 2021) ("Because the Court finds that nearly all objections are merely a rehash of arguments already raised and decided upon by the Magistrate Judge, the Court will not address each objection here."); *Aslanyan v. Herzog*, No. 14-cv-0511 JLR, 2014 WL 7272437, at *1 (W.D. Wash. Dec. 17, 2014) (rejecting a challenge to a Magistrate's Report and Recommendations when "all of [plaintiff's] objections simply rehash arguments contained in his amended opening memorandum or in his reply memorandum"). As Courts in other Districts have recognized and explained, such re-litigation is not an efficient use of judicial resources.

There is no benefit to the judiciary "if the district court[] is required to review the entire matter *de novo* because the objecting party merely repeats the arguments rejected

by the magistrate. In such situations, this Court follows other courts that have overruled the objections without analysis." *Hagberg v. Astrue*, No. CV-09-01-BLG-RFC-CSO, 2009 WL 3386595, at *1 (D. Mont. Oct. 14, 2009). In short, an objection to a magistrate's findings and recommendations "is not a vehicle for the losing party to relitigate its case." *Id.*; *see also Conner v. Kirkegard*, No. CV 15-81-H-DLC-JTJ, 2018 WL 830142, at *1 (D. Mont. Feb. 12, 2018); *Fix v. Hartford Life & Accident Ins. Co.*, CV 16-41-M-DLC-JCL, 2017 WL 2721168, at *1 (D. Mont. June 23, 2017) (collecting cases); *Eagleman v. Shinn*, No. CV-18-2708-PHX-RM (DTF), 2019 WL 7019414, at *4 (D. Ariz. Dec. 20, 2019) ("[O]bjections that merely repeat or rehash claims asserted in the Petition, which the magistrate judge has already addressed in the R&R, are not sufficient under Fed. R. Civ. P. 72.").

The R&R addressed the record and applied the law to it, and concluded that Farnsworth had not met his habeas burden. Farnsworth's hand-written objections are thoughtful, thorough, and mostly clear, but they largely reiterate arguments he already made to the state courts and to the Magistrate Judge in this case. For that reason, the Court will not review the entire R&R *de novo*. Nevertheless, Farnsworth is in prison for life, and his claims are not frivolous, even if they are not successful. The Court will address his objections to the recommended denial of his primary claims.

**C.    Ineffective assistance.**

Farnsworth argues that the R&R wrongly concluded that the state courts' rejection of his claims of ineffective assistance of standby counsel did not amount to an unreasonable application of any clearly established federal law. *See* Dkt. 85 at 31. He

1    incorporates his arguments made before Judge Creatura and reasserts that his standby

2    counsel was ineffective.

3        The R&R properly rejected this argument because there is no clearly established

4    federal law establishing that a habeas petitioner who proceeded pro se at trial may rely on

5    the ineffective assistance of standby counsel. While it appears that Farnsworth's standby

6    counsel assumed a substantive role at trial, neither Farnsworth's pro se status nor

7    counsel's standby status were formally altered during trial. In such a case, there is no

8    clearly established federal law holding that an ineffective assistance claim can be made.

9        The Supreme Court case that articulated the constitutional right to self-

10    representation in a criminal trial, *Faretta v. California*, also explained—*warned*—that

11    once a defendant waives his Sixth Amendment right to counsel, he may not thereafter

12    argue ineffective assistance of counsel. 422 U.S. 806, 835 n.46 (1975). This is a

13    commonsense rule, and this court cannot alter it, even if were inclined to do so (which it

14    is not). *See Teague v. Lane*, 489 U.S. 288, 316 (1989) (a federal court may not announce

15    or apply a new rule in a federal habeas case.).

16        The Court therefore ADOPTS the R&R's thorough analysis of this issue.

17    Farnsworth fails to demonstrate, either in his original petition or his objections, that the

18    state court decisions were contrary to clearly established federal law or were based on an

19    unreasonable factual determination under the evidence. His § 2254 habeas petition on this

20    point is DENIED.

21

22

1    **D.      Prosecutorial Misconduct.**

2            Farnsworth has also consistently argued that the prosecutor in his state court trial

3    engaged in misconduct, in several ways. Primarily, he argues that he should have been

4    permitted to use McFarland's plea agreement to impeach McFarland at trial, and that the

5    prosecutor vouched for McFarland's false evidence. He argues the prosecutor failed to

6    correct false testimony, misrepresented Farnsworth's prior convictions, and failed to

7    disclose exculpatory evidence. Finally, Farnsworth argues that the prosecutor engaged in

8    misconduct by eliciting testimony about what Farnsworth said when asked for a

9    handwriting sample, violating his Fifth Amendment right to remain silent.

10           The state accurately contends that the scope of this court's review of a

11   prosecutorial misconduct habeas petition is narrow. The issue is one of due process, not

12   the broad exercise of supervisory power. Dkt. 90 at 3 (quoting *Darden v. Wainwright*,

13   477 U.S. 168, 181 (1986)). It is "not enough that the prosecutors' remarks were

14   undesirable or even universally condemned." *Darden*, 477 U.S. at 181 (internal quotation

15   marks omitted). "The relevant question is whether the prosecutors' comments 'so

16   infected the trial with unfairness as to make the resulting conviction a denial of due

17   process.'" *Id*. (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

18           The Court must view the prosecutor's challenged remarks in the context of the

19   entire trial. *Greer v. Miller*, 483 U.S. 756, 765–66 (1987); *Darden*, 477 U.S. at 179. The

20   petitioner may not obtain relief where the trial judge properly instructed the jury. This is

21   because "arguments of counsel generally carry less weight with a jury than do

22   instructions from the court." *Boyde v. California*, 494 U.S. 370, 384 (1990). A petitioner

1   is not entitled to relief where the judge instructed the jury to base their decision on the

2   evidence, instructed the jury that counsel's arguments are not evidence, and there is

3   overwhelming evidence of guilt. *Darden*, 477 U.S. at 182; *Donnelly*, 416 U.S. at 640–45.

4        **1.    McFarland's testimony.**

5        Farnsworth's better arguments relate to the trial testimony of his partner,

6   McFarland. Farnsworth complains that the trial court wrongly excluded McFarland's plea

7   agreement, that McFarland lied on the stand about whether he had pled guilty to robbery

8   or to both robbery and theft, and that the prosecutor knowingly failed to correct

9   McFarland's testimony and instead improperly vouched for his credibility.

10       This series of related arguments was made to and rejected by the state courts on

11  direct appeal, in connection with Farnsworth's personal restraint petition, and by the

12  magistrate judge. Dkt. 81 at 8–11. As each held, and as the state argues in response to

13  Farnsworth's objections to the R&R, Farnsworth must do more than establish that one or

14  more of these actions was erroneous. To support habeas relief, Farnsworth must also

15  establish that the misconduct "actually prejudiced" him. *See* Dkt. 90 at 5 (citing *Brecht v.*

16  *Abrahamson*, 507 U.S. 619, 637–39 (1993)). A state court determination that the alleged

17  error did not cause prejudice is an adjudication of the claim "on the merits" for purposes

18  of 28 U.S.C. § 2254(d). *Davis v. Ayala*, 576 U.S. 257, 268–69 (2015). Thus, the state

19  court's harmlessness determination cannot support a habeas petition unless that

20  determination itself was unreasonable. Dkt. 90 at 5 (quoting *Fry v. Pliler*, 551 U.S. 112,

21  119 (2007)). Habeas relief is only appropriate if the state court applied harmless error

22

1    review in an objectively unreasonable manner. *Mitchell v. Esparza*, 540 U.S. 12, 18

2    (2003).

3         Farnsworth argues that he was unable to demonstrate that McFarland testified

4    against him in order to avoid his own third strike and a resulting life without parole

5    sentence. The Court agrees that the plea agreement, or at least the relevant portion of it,

6    was likely admissible under Rule 403—it reflected that McFarland pled guilty to both

7    robbery and theft, described the factual circumstances of his plea, and his agreement to

8    testify against Farnsworth. It may have caused some confusion, but it was not likely to

9    unfairly prejudice the prosecution, and all these topics are all fair game for cross

10   examination. Farnsworth was entitled to try and demonstrate that McFarland was

11   motivated to see that Farnsworth was convicted.

12        The flaw in Farnsworth's habeas claim, though, is that he was able to elicit these

13   facts without the plea agreement. As the R&R points out, McFarland did inform the jury

14   that his third strike would have resulted in a life sentence, and that, in exchange for his

15   plea and his agreement to testify against Farnsworth, he was instead facing a sentence of

16   "8–10 years." Dkt. 81 at 9 (citing Dkt. 46-4 at 1524–25).

17        Farnsworth specifically argues that admitting the plea agreement would have

18   permitted him to demonstrate that McFarland inaccurately testified that he had pled guilty

19   to only one crime, not to both first degree robbery and first degree theft. He claims that

20   the prosecutor therefore presented false evidence. But McFarland's incorrect testimony

21   about the terms of his plea agreement arguably *bolstered* Farnsworth's defense at trial

22   that McFarland's testimony was motivated by biased self-interest; McFarland told the

1    jury he received an even better deal than he actually did. *See* Dkt. 81 at 10. In any event,

2    the jury was told that McFarland had pled guilty to two crimes, and the state courts

3    properly concluded that the introduction of McFarland's plea agreement would not have

4    altered the outcome.

5        In short, McFarland's testimony did not leave the jury with the "impression" that

6    he had no incentive "other than to testify truthfully." *See* Dkt. 85 at 7. Farnsworth sought

7    to impeach McFarland and establish that his motive to testify untruthfully was his desire

8    to avoid a life sentence, and he did so. Each court that has reviewed this claim has

9    concluded that any error in excluding the plea agreement was not prejudicial and was

10   harmless. As the Washington Supreme Court explained:

11       [T]he exclusion of McFarland's plea agreement did not materially affect the
         outcome of the trial. As discussed above, the jury was well aware of the
12       benefit McFarland received by testifying against Farnsworth. It would be
         different if the plea agreement was excluded and the jury did not otherwise
13       learn of the plea deal. Under those circumstances, the jury would have not
         learned of McFarland's potential bias and would have been unable to judge
14       the veracity of McFarland's testimony. However, that is simply not the case
         here. McFarland's statements fully informed the jury of the deal he was to
15       receive in exchange for his testimony against Farnsworth, and the plea
         agreement was merely cumulative of other evidence presented. From that,
16       the jury already had the relevant information to evaluate McFarland's
         motive to testify. Therefore, we find that even if it had been error to
17       exclude the plea agreement, the error would have been harmless.

18   Dkt. 46-1 at 43–44.

19       Farnsworth has not shown that this conclusion was unreasonable, and his

20   argument is not a viable basis for § 2254 relief.

21       Farnsworth's follow-on prosecutorial misconduct claims were similarly not

22   prejudicial, and are not sufficient for habeas relief, for the same reasons. These claims

1   center on Farnsworth's arguments that the state opposed his offer of McFarland's plea

2   agreement,[2] the fact the prosecutor called McFarland to testify as he did, and that the

3   state presented false evidence when McFarland testified about a better plea deal than the

4   one he actually received in exchange for his testimony.

5       Farnsworth also claims the prosecutor engaged in improper "vouching," stating

6   "that's what happened." The R&R concluded that the short statement, followed by an

7   immediate clarification that she was asking McFarland how he knew what happened, did

8   not amount to the prosecutor's personal endorsement of McFarland's credibility. Dkt. 81

9   at 13 (quoting *United States v. Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir. 2005)).

10      Farnsworth's final claim about McFarland's testimony is that the prosecutor

11  engaged in misconduct by eliciting from McFarland testimony that he was motivated to

12  testify against Farnsworth because he saw a handwritten note and a police report, in

13  which Farnsworth implicated McFarland. Farnsworth claims both that the documents did

14  not exist, and, inconsistently, that the trial court erred in excluding them when he offered

15  them to impeach McFarland. In either case, the Court agrees with the state courts and the

16  R&R that any error in this regard was harmless.

17      Farnsworth has not shown that the state court's resolution of these claims was

18  prejudicial to him; the errors, if any, were harmless, and they do not support habeas

19  relief. *See* Dkt. 46-1 at 40–44. The state courts' resolution of these arguments was not

20  contrary to or an unreasonable application of clearly established federal law or an

21

22      [2] Farnsworth's alternate characterization of the plea agreement as "*Brady* material" is misplaced.

1    unreasonable determination of the facts in view of the evidence at trial. The R&R's

2    recommended resolution of these claims is ADOPTED, and Farnsworth's habeas petition

3    based on prosecutorial misconduct relating to McFarland's testimony is DENIED.

4       **2.**  **Prior convictions.**

5       Farnsworth also argues that the prosecutor engaged in misconduct by telling the

6    jury in opening statement that the evidence would show that Farnsworth had been

7    previously convicted of robbery wearing a wig and sunglasses as a disguise, the same

8    disguise McFarland wore at the subject bank robbery. The prosecutor did not follow up

9    and put on such evidence at trial. Farnsworth argues, as he has all along, that the

10   prosecutor thus presented false evidence.

11      As the Washington Supreme Court correctly explained, a prosecutor's opening

12   statement may outline the anticipated evidence that counsel has a good faith belief will be

13   produced at trial. *State v. Campbell*, 103 Wn.2d 1, 15–16 (1984). The defendant bears the

14   burden of showing the prosecutor acted in the absence of good faith. *Id*. at 16; *see also*

15   Dkt. 46-1 at 44–45. Farnsworth has not shown that the prosecutor's in-trial decision not

16   to produce such evidence was made in bad faith. As the Supreme Court explained on

17   direct review, it was not bad faith for the prosecutor to change tactics, in response to

18   Farnsworth's defense of the case:

19      Here, when the State mentioned the robberies in its opening statement, it
        intended to elicit evidence of the robberies, as evidenced by the arguments
20      prior to trial about the admissibility thereof. Farnsworth does not claim the
        prosecutor acted in bad faith by noting his prior robbery convictions in its
21      opening statement, nor does the record show bad faith. Instead, the record
        shows that the prosecution changed its strategy and opted to elicit such
22      evidence in rebuttal. In response, the defense changed its strategy, and then

ORDER - 13

the State decided not to elicit evidence regarding the prior robberies. Therefore, this claim of error fails because the State's opening merely outlined anticipated evidence that would be produced at trial, as allowed by our case law.

*Id.* at 45.

The jury was properly instructed that lawyers' statements and arguments are not evidence, and that it must decide the case on the admitted evidence. Farnsworth has not shown that the state courts' rejection of this claim was unreasonable, and it is not a viable claim for habeas relief. The R&R on this point is ADOPTED, and Farnsworth's § 2254 habeas petition on this basis is DENIED.

### 3. Missing video.

Next, Farnsworth argues that the state violated his rights by failing to timely obtain a complete surveillance video from a Home Depot near the subject bank. The state knew that Home Depot has a policy of destroying its surveillance video after 90 days. Farnsworth argues that the state should have obtained and preserved this evidence, and asserts that the missing video could have included exculpatory evidence. Farnsworth essentially asserts that the missing video would have shown McFarland purchasing heroin from a third party, while Farnsworth waited in the car (near the bank). Each court that has addressed this claim has reasonably determined that Farnsworth's claims about what the missing video would have revealed are purely speculative. The R&R correctly concludes that "*Brady* does not apply to 'preliminary, challenged, or speculative information.'" Dkt. 81 at 19 (quoting *United States v. Agurs*, 427 U.S. 97, 109 n.16 (1976)). There is no evidence supporting Farnsworth's claim that the missing video

1   would have contained footage tending to exonerate him. Furthermore, Farnsworth has not

2   shown that the police acted in bad faith in not preserving the remainder of the Home

3   Depot surveillance video. There is no evidence that the longer version was in the state's

4   possession, or that it should have anticipated that a longer version would be needed.

5         Farnsworth has not demonstrated that the state courts' adjudication of this claim

6   was an unreasonable application of clearly established federal law, or unreasonably

7   determined the facts based on the evidence. As the R&R correctly determined, this claim

8   does not entitle Farnsworth to habeas relief under § 2254(d). That determination is

9   ADOPTED and Farnsworth's habeas petition on this basis is DENIED.

10         **4.**      **Right to remain silent.**

11         Finally, Farnsworth argues that the state violated his Fifth Amendment right to

12   remain silent (his right against self-incrimination) when it offered evidence at trial that he

13   had angrily and forcefully refused a detective's effort to obtain, by court order, a

14   handwriting sample (to compare to the note that McFarland handed to the bank teller).

15   The prosecutor also referenced Farnsworth's angry response in closing, arguing that he

16   was "afraid and nervous" because he knew the sample would implicate him. Dkt. 81 at 22

17   (quoting Dkt. 77-1 at 1036).

18         It is clearly established that the right against self-incrimination precludes a

19   prosecutor from commenting on a defendant's decision not to testify. *See Griffin v.*

20   *California*, 380 U.S. 609, 614–15 (1965) (prosecutor may not argue that a defendant is

21   guilty based on his silence when he invokes his constitutional right to remain silent).

22

1    Farnsworth did not object to this evidence or argument at trial, but he did raise the

2    issue on direct appeal. See Dkt. 81 at 21. The Washington Supreme Court concluded that

3    Farnsworth had failed to show the required manifest error affecting a constitutional right:

4         McFarland's detailed testimony implicating Farnsworth had a much greater
          impact than the detective's testimony that Farnsworth was angry about
5         providing a handwriting sample. Therefore, given what the trial court knew
          at the time, it would not reasonably conclude that admitting the detective's
6         testimony would have identifiable consequences as to the outcome of
          Farnsworth's trial. Therefore, this is not a manifest error that would warrant
7         our review despite Farnsworth's failure to raise this issue at trial.

8    Dkt. 46-1 at 47–48. This claim was also rejected on collateral review in state court. The

9    R&R also addressed this claim in detail, Dkt. 81 at 20–23, and concluded that the

10   prosecutor's closing[3] asked the jury to draw a reasonable inference from the evidence in

11   the record; it commented on what Farnsworth did and what he said, not on his invocation

12   of the right to remain silent. It also agreed with the state courts that even if the evidence

13   or argument was error, any error was harmless. *Id.*

14   The Supreme Court has long held that take a handwriting sample, or exemplar,

15   does not implicate a defendant's Fifth Amendment privilege against self-incrimination.

16   The handwriting itself, like a voice or a body, is a physical characteristic. It is not

17   communicative, and it is outside the Fifth Amendment's protection. *Gilbert v. California*,

18   388 U.S. 263, 266–67 (1967). The Ninth Circuit has held that evidence of a defendant's

19   refusal to furnish writing exemplars, like evidence of a defendant's refusal to provide

20

21   _____
         [3] The evidence and argument apparently did reference Farnsworth's stated reason for declining
22   the court-ordered sample, that he wanted to have his standby counsel present. See Dkt. 81 at 23 (citing
     Dkt. 46-4 at 1345–46, 1361–62).

1   fingerprints or a voice exemplar, "is probative of consciousness of guilt and admissible

2   on that basis." *United States v. Wagner*, 834 F.2d 1474, 1484 and n.8 (9th Cir. 1987); *see*

3   *also United States v. Flewitt*, 981 F.2d 1260, 1992 WL 383316, at *2 (9th Cir. 1992)

4   (unpublished table decision). The Court agrees that Farnsworth has not established that

5   the evidence or the argument was manifest error, or that the state courts' determination

6   that any error was harmless was itself unreasonable.

7         Farnsworth has not demonstrated that the state courts' adjudication of this claim

8   was an unreasonable application of clearly established federal law, or unreasonably

9   determined the facts based on the evidence. As the R&R correctly determined, this claim

10  does not entitle Farnsworth to habeas relief under § 2254(d). That determination is

11  ADOPTED and Farnsworth's habeas petition on this basis is DENIED.

12  **E.      Farnsworth is entitled to a Certificate of Appealability and *to in forma***
    ***pauperis* status on appeal.**

13        Farnsworth also objects to the R&R's recommended denial of a Certificate of

14  Appealability. Dkt. 85 at 32. He asserts that he has made a substantial showing of the

15  denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The R&R concluded that

16  Farnsworth failed to satisfy this standard "by demonstrating that jurists of reason could

17  disagree with the district court's resolution of his constitutional claims or that jurists

18  could conclude the issues presented are adequate to deserve encouragement to proceed

19  further." Dkt. 81 at 40 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

20        The issues Farnsworth raises are not frivolous, and they are not made in bad faith.

21  The Court of Appeals vacated Farnsworth's robbery conviction and remanded for

22

1  sentencing on first degree theft, but the Washington Supreme Court affirmed the robbery

2  conviction. *Farnsworth*, 185 Wn.2d at 774, 789. Indeed, the Supreme Court's ruling was

3  split, five-to-four, and the dissent concluded that there was constitutional error in the trial

4  and that the error could not be said to be harmless beyond a reasonable doubt. *Id.* at 790–

5  802 (Gordon McCloud, J., dissenting in part). The Court disagrees with the R&R and

6  concludes that reasonable jurists could disagree—have disagreed—about the resolution

7  of Farnsworth's constitutional claims. The Court therefore DECLINES to adopt the R&R

8  on this matter and will GRANT Farnsworth a Certificate of Appealability under 28

9  U.S.C. § 2253(c)(2).

10      The Court similarly DECLINES to adopt the R&R's recommendation to revoke

11  Farnsworth's *in forma pauperis* status for the purposes of appeal. *See* Dkt. 81 at 40. The

12  Court does not agree that an appeal would be frivolous, and it will permit Farnsworth to

13  maintain his *in forma pauperis* status for the purposes of any appeal.

14      The Court adopts therefore ADOPTS the R&R's analysis of Farnsworth's habeas

15  petition, and its recommended denial. Farnsworth has not met his § 2254 burden, and his

16  habeas petition, Dkt. 67, is DENIED.

17                          **III.  ORDER**

18      The Court having considered the R&R, Petitioner's objections, and the underlying

19  record, ORDERS as follows:

20      (1)    The R&R is **ADOPTED in part**;

21      (2)    Farnsworth's Habeas Corpus Petition, Dkt. 67, is **DENIED**;

22      (3)    Farnsworth's application for a Certificate of Appealability is **GRANTED**;

(4)     Farnsworth's *in forma pauperis* status shall **CONTINUE** for purposes of

appeal; and

(5)     The Clerk shall enter a **JUDGMENT** and close the case.

Dated this 30th day of September, 2022.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 19